(100 App. Div. 191)

HUNTER SMOKELESS POWDER CO. v. HUNTER et al.

(Supreme Court, Appellate Division, Fourth Department. January 4, 1905.)

1. CONTRACTS—ORGANIZATION OF CORPORATIONS—DISTRIBUTION OF STOCK—CONSTRUCTION.

A contract betwen an inventor and capitalists, who had each contributed $250 for the perfection of a machine, provided that the capitalists were to contribute a certain amount of money, and that the inventor, in lieu of money, was to give his process and time to the enterprise, and that when it was under way a corporation should be formed to manufacture the desired product. It further provided that the interest of the inventor in the capital stock of the corporation should be three-fifths, and the interest of the capitalists two-fifths, and that the capital stock should be distributed accordingly. *Held*, that the capitalists were entitled to two-fifths of the capital stock of the corporation after it was formed, and not merely to a repayment in stock at par value of the money actually advanced by them.

2. APPEAL—DISPOSITION OF CAUSE—REVERSAL.

Where a judgment conditionally directed respondent to write out and deposit a chemical formula, and further adjusted the respective interests of respondent and appellants in the capital stock of a corporation, and the judgment was reversed on appeal from that portion thereof which adjusted the interest in the stock of the corporation, it would be reversed as a whole, although there was no appeal from the portion directing the deposit of the formula.

Appeal from Special Term, Monroe County.

Action by the Hunter Smokeless Powder Company against Robert H. Hunter, impleaded with Arthur C. Mosher and others. From a part of the judgment rendered, plaintiff appeals, and from another part thereof defendants Mosher and others appeal. Reversed.

These are separate appeals, respectively, by the plaintiff and by the individual appellants from portions of a judgment of the Supreme Court entered in the Monroe county clerk's office August 6, 1903, after a trial at Special Term. Said judgment conditionally directs the respondent Hunter to write out and deposit a formula for the manufacture of smokeless powder. It also adjudicates as between defendants their respective rights to the capital stock of the plaintiff, and provides for the cancellation of certain certificates of said stock theretofore issued. The plaintiff appeals from that portion of the judgment which makes conditional the deposit of said formula. The individual appellants appeal from that portion which determines their rights in the capital stock, and requires the cancellation of former certificates.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, HISCOCK, and STOVER, JJ.

James Breck Perkins and John R. Fanning, for appellants.
George A. Carnahan, for respondent.

HISCOCK, J. The original purpose of this action, as instituted by the plaintiff, was to compel the defendant Hunter to deposit a formula claimed to be possessed by him for smokeless powder, and to compel him and one Fanning to execute a proper bill of sale of said process and formula, and to restrain the transfer of rights or the giving of information in or concerning said formula and process to any other persons. The defendant Hunter by his answer denied the plaintiff's right to this relief, and in addition he and the other defendants, by answers served by

them before and after the judgment, have raised issues in regard to the proper distribution of the capital stock of the plaintiff, which was organized for the purpose of manufacturing and selling the powder which might be produced under the formula.

No question has been raised before us but that the memorandum handed down by the learned trial justice, and upon which the judgment was entered, constitutes a decision, within the provisions of the Code, and therefore we shall treat it as such, although it seems to us to be an opinion, rather than a decision.

The important provisions of the judgment are those which determine that, of a total authorized issue of capital stock of the plaintiff of $100,-000, the defendant Hunter is entitled to three-fifths, or $60,000, and the individual appellants to $250 apiece. Hunter has taken no appeal from the provisions which require him to write out and deposit the formula for his process, and the appeal by the plaintiff from this portion of the judgment only questions the conditions imposed before Hunter can be compelled so to do, and which conditions are connected with and dependent upon the distribution of capital stock referred to. If the provisions for the distribution of the stock are reversed, it will be unnecessary to consider at length the other portions of the judgment. We think that said provisions are erroneous and should be reversed, and shall proceed to a consideration of the facts which lead us to that conclusion.

The respondent Hunter had what he regarded as a secret and valuable formula for manufacturing smokeless powder, but apparently he did not have the requisite capital with which to develop the same. It was necessary to devise a proper machine of utilizing the process. An arrangement was made by which the individual appellants were to contribute $200 apiece for perfecting a machine. This amount was subsequently increased by $50 each. Having reached this understanding, the parties sought to express in a written agreement their plans and rights. This instrument which is the basis of the decree determining the respective rights of the parties to the capital stock of the plaintiff, which was subsequently organized in accordance therewith, becomes a subject of consideration. We do not think it will bear the interpretation made by the learned trial court. It is perhaps unnecessary to state that this paper is very inartificially drawn and incomplete. This is somewhat humorously illustrated by the clause which in effect provides that any individual who did not pay the sum proposed should forfeit the sum "so paid." As we are able to gather its intent and meaning, however, it attempts to provide for two things: In the first place, there was to be evolved and perfected a practical and successful method of manufacturing powder from the process claimed to be possessed by Hunter. To this end, the individual appellants were to contribute a certain amount of money, and Hunter, "in lieu of any payment of money," was to furnish "the use of said process," and was to "give his time necessary to the manufacture of said gunpowder, as soon as the machine can be operated in a proper place to be secured for operating the same, for the period of thirty (30) days." Then, secondly, "Within ninety (90) days after the machine is completed, and the manufacturing of the powder is begun," a corporation or partnership was to be formed

for the purpose of manufacturing said powder upon a larger or commercial scale, and of putting the same upon the market; and the status of the parties in this proposed organization is defined by the final clause, which we shall consider hereafter. So, as it appears, the first stage contemplated was to be one of joint contribution by the respective parties toward a merchantable article; one contributing labor and invention, and the other capital for development. The second stage was to be a manufacturing and marketing concern, through which the parties might obtain pecuniary returns for their prior investment. It is not disputed that the parties carried out the provisions for development, although it is said that the contributions of money have not produced valuable results in the way of machinery. But it does not appear that this is due to any fault of the appellants. At any rate, the parties entered upon the second stage by organizing the plaintiff corporation as contemplated, and the issue has been precipitated as to the rights of the parties in its capital stock of $100,000. The clause particularly bearing upon this, to which we have already briefly referred, reads as follows:

"The interest of the parties of the first part [which at this time may be construed as meaning Mr. Hunter] shall be (⅗) and the interest of the parties of the second part [appellants] shall be (⅖) for the purpose of organizing a stock company, or for the purpose of a copartnership; and the capital stock shall be distributed accordingly, or as the copartnership shall be provided for the same."

The respondent has urged, and the trial justice has held, that this clause means what it says, so far as Hunter is concerned, and that he should have $60,000 of the stock, but that in the case of the appellants it means they should have only $250 apiece in payment at par value for the moneys actually advanced, instead of the remaining two-fifths mentioned. We are unable to appreciate the propriety of, or agree with, this division. Considering the situation of the parties as they were at the opening of the history written in this case, there would be nothing unreasonable in an understanding that the ones furnishing necessary funds, equally with the inventor, should share in the liberal stock issue by which subsequently would be measured their large expectations from their joint product. Assuming that these appellants were business men, we can scarcely understand their willingness to advance capital to develop a patent or secret process, when the limit of their returns would be simple repayment of their loan in stock at par of a future and uncertain enterprise. It is said by the learned counsel for the respondent that his contention and the decree do not necessarily mean this, but that, although the issue of stock to them was limited to the amount at par of money advanced, there might be some other method of giving them an interest in the corporation in return for their speculation. We, however, do not see this possibility under the agreement. When we review the words of the clause which we have quoted in the light of these considerations, they appear to us to sustain the claim of the appellants that they were to receive two-fifths of the stock issue for their contributions. If it be urged that this would be an extravagant recompense, it may be answered that this would entirely depend upon the value of the process developed in part by them, and against which the stock would

be issued. It unfortunately is not unusual to capitalize in large figures small contributions in uncertain enterprises. At any rate, we fail to see how else could be properly satisfied the provision for an interest of "(⅔) for the purpose of organizing a stock company," for which "the capital stock shall be distributed accordingly." The privilege of going ₒinto the market and buying stock of the concern at market rates would not seem to us to be an "interest" which satisfied either the meaning of the agreement or the equities of the parties, and such purchase would scarcely be a "distribution" of stock. Moreover, we do not perceive by what process of distinction this clause can be construed as meaning what it says in the case of the respondent Hunter, who is awarded three-fifths of the stock just as provided, and as not meaning what it says when in the same sentence it allots the remaining two-fifths to the other promoters.

The learned counsel for the respondent says that, if this method of distribution is pursued, all of the capital stock will be received by the various parties, and none will be reserved by which to procure a working capital. This may be so. It frequently does happen that an agreement incomplete and uncertain as this one is does fail to provide all the details for a successful enterprise. This result, however, does not strike us as being so unreasonable a one as would be produced by the contention of respondent, which would produce a residuum of capital stock for working purposes entirely at the expense of the parties upon one side of the agreement.

While the views thus expressed indicate error in only a portion of the judgment appealed from, we still think that the entire judgment should be reversed, although the defendant Hunter has taken no appeal from that portion thereof which is against him. He very likely would have been content to carry out those provisions, provided the entire judgment stood. The portion thereof against him is based upon parol testimony, which is vigorously attacked by his counsel. The different portions of the judgment are intimately connected and related to each other, and we think that the entire judgment should be reversed, and a new trial granted.

Judgment reversed and new trial granted, with costs to the appellants to abide event, upon questions of law and fact. All concur.